**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**GERARD NUOVO,**

      **Plaintiff,**

                           **Case No. 2:09-cv-312**
     **v.**                        **JUDGE GREGORY L. FROST**
                                **Magistrate Judge Mark R. Abel**

**THE OHIO STATE UNIVERSITY, et al.,**

      **Defendants.**


**OPINION AND ORDER**

This matter is before the Court for consideration of the following filings:

(1) a motion to dismiss filed by Defendants OSU Pathology Services, LLC, Ohio State University Physicians, Inc., Hagop Mekhijian, and Daniel Sedmak (Doc. # 55);

(2) a motion to dismiss filed by Defendant Sanford Barsky (Doc. # 56), a memorandum in opposition filed by Plaintiff (Doc. # 78), and a reply memorandum filed by Barsky (Doc. # 81); and

(3) a motion to dismiss filed by Defendants The Ohio State University, E. Gordon Gee, Gilbert Cloyd, Hagop Mekhijian, Caroline Whitacre, Joseph Alutto, Daniel Sedmak, and Robert Bornstein (Doc. # 57), a memorandum in opposition filed by Plaintiff (Doc. # 80), and a reply memorandum filed by the foregoing defendants (Doc. # 82).

For the reasons that follow, this Court finds the motion filed by OSU Pathology Services, LLC, Ohio State University Physicians, Inc., Mekhijian, and Sedmak well taken (Doc. # 55), the motion filed by Barsky well taken in part (Doc. # 56), and the motion filed by The Ohio State University, Gee, Cloyd, Mekhijian, Whitacre, Alutto, Sedmak, and Bornstein well taken in part (Doc. # 57).

## I. Background[1]

According to his pleading, Plaintiff, Dr. Gerard Nuovo, is an Italian-American physician, cancer researcher, and tenured professor of pathology employed at the medical center at The Ohio State University ("OSU").  Defendant Dr. Sanford Barsky is allegedly an employee and shareholder of Defendants OSU Pathology Services, LLC ("OSUPS") and Ohio State University Physicians, Inc. ("OSUPI").  Defendant E. Gordon Gee is President of The Ohio State University, and Defendant Dr. Gilbert Cloyd is the former chairman of the OSU Board of Trustees.  Dr. Joseph Alutto is the OSU Vice Provost, and Defendant Dr. Hagop Mekhijian is a supervisor at OSU.  Dr. Daniel Sedmak is an employee and shareholder of OSUPS and OSUPI. Dr. Robert Bornstein is the Dean of Academic Affairs at OSU.  Defendant Dr. Caroline Whitacre is an OSU employee; the Second Amended Complaint does not identify her specific position. The Second Amended Complaint does, however, describe most of these defendants as agents of OSUPS and OSUPI.

In June 2005, OSU, OSUPS, and OSUPI implemented procedures under a quality assurance policy designed to identify and remedy major discrepancies in the diagnosis by OSU cytotechnologists of pap smears.  On June 16, 2005, Plaintiff identified and reported to Thom Smith, the Director of University Reference Labs, three major discrepancies in which there had been diagnoses of pap smears as indicating that women had HPV when subsequent biopsies

---

[1]  The Court notes that its account of the background facts and the analysis of these facts are tied to the Rule 12(b)(6) standard involved in today's decision.  In a companion case, Case No. 2:10-cv-240, this Court held a hearing on a motion for injunctive relief and engaged in factfinding and assessments of the evidence, some of which involved events that occurred after the filing of the Second Amended Complaint at the core of the instant Opinion and Order.  The Court has necessarily ignored the resultant factual determinations, which at times contradict or cast doubt upon some of the factual allegations accepted as true herein.

revealed no HPV.  These discrepancies were in turn reported to Elizabeth Seely, a senior administrator in charge of cytotechs, who was under the direct supervision of Mekhijian.  Seely allegedly ordered Plaintiff to suspend application of the quality assurance policy.  Plaintiff objected and requested that the cytotechnologists involved be removed from clinical practice and retrained.  He also allegedly identified twenty-three more misdiagnoses.

One problem with false positive pap smears is that a woman relying on the incorrect result may have a significant portion of her cervix removed, resulting in a condition known as an incompetent cervix.  This condition increases the likelihood of a miscarriage, premature births, and the premature rupture of membranes.  Another problem is that some of the women were allegedly diagnosed as having the venereal disease HPV.

Although the quality assurance policy was subsequently amended in 2005, the discrepancy rule at the heart of Plaintiff's reports remained in the policy.  Plaintiff objected on November 8, 2005, to the purportedly non-substantive changes to the policy and to Seely's order that the policy be suspended.  The next day, Plaintiff reported to Mekhijian that in over 40% of patient cases the diagnoses of malignant HPV had been incorrect.  Mekhijian purportedly did nothing.  On November 30, 2005, allegedly with Mekhijian's approval, Seely wrote to Plaintiff and suggested policy changes such as the removal of the quality assurance policy provision requiring that biopsies be used to verify pap smear results and that the policy be effective January 1, 2006, instead of being back-dated to cover the period about which Plaintiff had complained.  Plaintiff refused to agree to these changes and communicated his position to OSU's legal counsel and risk management in December 2005.

OSU's legal counsel and risk management allegedly informed Plaintiff that he had to sign

3

off on the changes.  Plaintiff refused, and on January 6, 2006, he reported his concerns to Dr. Sanford Barsky and Dr. Saul Suster (Plaintiff's immediate supervisor), including his allegation that hundreds of women had been and were being misdiagnosed with either a pre-cancer condition or venereal disease when they were perfectly healthy.  On that same day, Dr. Deborah Bartholomew wrote a letter to Suster in which she complained about the error rate prior to Plaintiff joining the clinical practice and supported his concerns.  Plaintiff then sent Seely a January 12, 2006 memorandum, copying Barsky and Mekhijian, in which Plaintiff repeated his concerns.

Plaintiff was subsequently fired from his clinical position with OSUPS and OSUPI and barred from accessing clinical laboratory pap smears and biopsies.  The stated reason behind these actions is that Plaintiff is not board certified and is therefore not qualified to engage in such work.  When Plaintiff requested that Barsky restore his laboratory privileges and indicated that he wanted to continue in the clinical treatment of women, Barsky allegedly told him no and called Plaintiff a "stupid Italian."  (Doc. # 51 ¶ 69.)  A non-Italian physician who had no clinical cervical pathology training replaced Plaintiff.  The January 2006 discharge reduced Plaintiff's salary.  He asserts that he is now making less then all similarly situated non-Italian employees under Barsky's supervision, despite having requested salary increases in 2006, 2007, 2008, and 2009.

On August 4, 2006, Barsky suspended Plaintiff's laboratory and clinical privileges on the grounds that Plaintiff had violated standards of professional conduct and created an environment detrimental to the safety of patients.  A Credential Committee later concluded that this suspension was unjustified and reinstated Plaintiff's privileges.  Plaintiff's clinical privileges

were again suspended on September 11, 2007, however.

During this period of time, Plaintiff received a 2007 annual review by Barsky. Plaintiff received a "D" performance evaluation. During the evaluation meeting, Barsky allegedly asked Plaintiff, "Why do you think I have taken all of these negative actions against you?" (Doc. # 51 ¶ 81.) When Plaintiff responded that he did not know why, Barsky purportedly said, "How bout, it's because I don't like Italians." (*Id.*) Plaintiff complained about this exchange to the Director of Human Resources, Kate Dillingham. Although Human Resources allegedly deemed Barsky's comment inappropriate, no corrective action was taken. During an appeal by Plaintiff, Human Resources purportedly told him that Barsky would undergo ethnic diversity training and that Plaintiff would receive a report. Neither occurred. On October 4, 2007, Barsky then filed research misconduct allegations against Plaintiff. Plaintiff asserts that he was not informed of these charges until February 15, 2008.

In a June 27, 2008 letter, Plaintiff informed Gee that Plaintiff was being retaliated against for his revealing the alleged cover-up of misdiagnoses and that he was being mistreated because he was an Italian-American. Plaintiff asserts that Gee did not act to remedy his concerns, even after Plaintiff again contacted Gee in 2008 and in 2009.

Plaintiff appealed the Human Resources department's finding regarding Barsky's alleged racial slurs in July 2008, but the charge against Barsky was dismissed. The following month, Plaintiff unsuccessfully requested the reinstatement of his privileges. In August 3, 2008 letters, Plaintiff also informed Alutto and the OSU Board of Trustees of the alleged cover-up of misdiagnoses and that he was being mistreated because he was an Italian-American.

On October 16, 2008, Plaintiff was informed that the academic misconduct charges

5

against him had been dismissed.  Two months later, Plaintiff sent a December 8, 2008 letter to

Dr. Wendy Frankel, the then-acting Chair of the Pathology Department, in which Plaintiff

described his various grievances.  Frankel purportedly requested that Plaintiff be reinstated, but

Plaintiff was denied such reinstatement.  Plaintiff then sent a December 30, 2008 letter to the

Vice President and Executive Dean for Health Sciences and Dean of the College of Medicine in

which Plaintiff asserted that Sedmak has and was retaliating against him.  Plaintiff also requested

reinstatement to cervical pathology and that he return to biopsy service.  Plaintiff's letter writing

continued with a February 2009 letter too the Joint Commission on Accreditation in which he

repeated his concerns over asserted misdiagnoses.

In May 2009, Plaintiff was informed that scientific misconduct charges has been filed

against him.  These charges constituted a re-opening of the previously dismissed 2007 charges

and included additional charges not previously investigated.  Plaintiff asserts that the charges

were not subjected to a preliminary assessment as required by federal regulations and OSU's

misconduct policy; rather, Plaintiff asserts, Whitacre and Bornstein simply reopened the 2007

misconduct case against him without the prerequisite circumstance that new information of

misconduct exist.  Whitacre and Bornstein purportedly stated that the university was compelled

to reopen the inquiry by the federal government's Office of Research Integrity.

Plaintiff filed this action on April 21, 2009.  In his eleven-count Second Amended

Complaint, Plaintiff asserts claims against the following defendants: OSU, OSUPS, OSUPI,

Barsky, Gee, Cloyd, Mekhijian, Whitacre, Alutto, Sedmak, Bornstein, and various John Doe

Defendants.  (Doc. # 51.)  Count one is a state law retaliation and violation of public policy

claim against OSUPS, OSUPI, Barsky, Gee, Alutto, Whitacre, Sedmark, Cloyd, Mekhijian, and

John Doe Defendants.  Count two is a national origin and ancestral discrimination claim under 42 U.S.C. § 2000e (asserting retaliation, disparate treatment, and a hostile work environment) against OSU, OSUPS, OSUPI, and John Doe Defendants.  Count three is a state law claim for the intentional infliction of emotional distress against OSUPS, OSUPI, Barsky, Gee. Alutto, Whitacre, Sedmark, Cloyd, Mekhijian, and John Doe Defendants.  Count four is a race and ancestry discrimination claim under 42 U.S.C. § 1981 against Barsky, Gee, Alutto, Cloyd, Bornstein, OSUPS, OSUPI, and John Doe Defendants.  Count five is a state law breach of contract claim against OSUPS and OSUPI.  Count six is a state law promissory estoppel claim against OSUPS and OSUPI.  Count seven is a First Amendment retaliation claim, presumably under 42 U.S.C. § 1983, against Barsky, Gee, Alutto, Mekhijian, Cloyd, Sedmak, Whitacre, and Bornstein.  Count eight is a procedural due process claim, also presumably under § 1983, against Barsky, Bornstein, Whitacre, OSU, OSUPS, and OSUPI.  Count nine is an abuse of process claim against Barsky.  Count ten is a civil conspiracy claim against Barsky, Gee, Alutto, Cloyd, Mekhijian, Sedmak, and Whitacre.  Finally, count eleven is a state law national origin, race, and ancestral discrimination claim under Ohio Revised Code §§ 4112.01 and 4112.14 against OSUPS, OSUPI, and John Doe Defendants.  (Doc. # 51 ¶¶ 144-210.)

OSUPS, OSUPI, Mekhijian, and Sedmak ("the OSUPS Defendants") have filed a motion to dismiss the claims against them.  (Doc. # 55.)  Plaintiff failed to respond to this motion.  Barsky has also filed a motion to dismiss, which has enjoyed full briefing by the parties.  (Docs. # 56, 78, 81.)  Finally, the parties have also fully briefed a motion to dismiss filed by OSU, Gee, Cloyd, Mekhijian, Whitacre, Alutto, Sedmak, and Bornstein ("The OSU Defendants").  (Docs. # 57, 80, 82.)  All three motions to dismiss are ripe for disposition.

## II.  Discussion

### A.  Standard Involved

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which the Court may grant relief.  This Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Moreover, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable.  *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

**B.  The OSUPS Defendants' Motion to Dismiss (Doc. # 55)**

The OSUPS Defendants argue that dismissal of Plaintiff's first claim for relief is

warranted because he has failed to identify a clear public policy that can provide the basis for his

claim.  Citing a state statute and various ethics opinions and administrative rules, Plaintiff pleads

in his Second Amended Complaint that the "[h]ealth, safety and well being of patients is the

public policy of Ohio."  (Doc. # 51 ¶ 146.)  He then pleads that the OSUPS Defendants engaged

in "continuous and ongoing acts and conduct" against him in violation of Ohio public policy.

(Doc. # 51 ¶ 148.)  The premise behind Plaintiff's claim is that the asserted conduct against him

was intended to punish him for reporting misdiagnoses and to silence him from engaging in

additional reporting.

What proves problematic for Plaintiff is that his pleading relies only on his perception of

an abstract public policy that he gleans from the statute, opinions, and rules he cites.  As a

general matter, at least *some* of the types of material upon which Plaintiff relies unquestionably

can present the public policy of Ohio.  *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x

560, 566 (6th Cir. 2009) ("We have previously noted that ' "public policy" [claims] may arise

from a number of sources including the federal and Ohio Constitutions, statutory law,

administrative rules or the common law . . . .' " (quoting *Jermer v. Siemens Energy &*

*Automation, Inc.*, 395 F.3d 655, 655-56 (6th Cir. 2005))).  The *specific* material Plaintiff cites,

however, fails to suffice.  For example, Ohio Revised Code § 4731.22 addresses the disciplining

of licensed physicians by the state medical board.  In reciting conduct that could result in

discipline, this statute sets forth standards governing physicians; it simply does not set forth

standards applicable to the employers of such physicians.  Equally unsuccessful for the same

9

core reason is Plaintiff's citation to a number of Ohio Administrative Code provisions: sections 3701-84-13, 3701-84-07, 3701-83-09, and 3701-84-12.  Plaintiff reads too much into a statute and administrative code provisions that provide too little to be said to constitute a clear public policy.

Plaintiff also relies on two ethics opinions from the American Medical Association.  It is not clear that this material was incorporated into Ohio law so as to constitute public policy.  *Cf. Ohio Urology, Inc. v. Poll*, 72 Ohio App. 3d 446, 451, 594 N.E.2d 1027, 1030 (1991) (declining to consider whether the Ohio General Assembly intended to incorporate American Medical Association interpretative opinions into Ohio Rev. Code § 4731.22(B)(18)).  This Court thus cannot say that Plaintiff's citation to the opinions evinces pleading the requisite reliance on a clear public policy.

Plaintiff is required to direct this Court to a clear public policy in order to sustain a common law public policy claim.  *See Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 46 (6th Cir. 2009) (noting that a plaintiff pursuing an Ohio common law claim for violation of public policy must identify a sufficiently clear public policy).  He has failed to meet this pleading burden, which has the consequence of mooting his alternative grounds for dismissal of claim one because this Court **GRANTS** the motion to dismiss this claim in regard to the OSUPS Defendants.

In his second claim for relief, Plaintiff asserts a Title VII claim against OSU, OSUPS, OSUPI, and John Doe Defendants for national origin and ancestral discrimination.  Title VII provides that

It shall be an unlawful employment practice for an employer –

10

(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . or national origin; or

(2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, or. . . national origin.

42 U.S.C. §§ 2000e-2(a)(1)-(a)(2).

In their briefing, OSUPS and OSUPI state that they move for dismissal of the Title VII claim "for the reasons stated by OSU in Section IV.B of its Brief in Support of its Motion to Dismiss (ECF No. 14), and Section B of its Reply Brief in Support of its Motion to Dismiss (ECF No. 40), which the OSUPS Defendants adopt and incorporate by reference."  (Doc. # 55, at 17.)  There is no Section IV.B in Document No. 14.  There is a Section II.B, however, and that portion of the prior briefing asserts that the Title VII claim "is, in large part, untimely and should be dismissed to that extent."  (Doc. # 14, at 10.)

The OSUPS Defendants predicate their assertion of untimeliness on the fact that Plaintiff filed his EEOC charge on August 22, 2008.  It is well settled that "[a] claim under Title VII is timely if filed within 300 days of any single act contributing to the hostile work environment." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) (citing 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  Thus, a Title VII claim is untimely if no specific actionable incident occurred within the limitations period.  *Id.*  Given the August 22, 2008 filing date, the OSUPS Defendants reason, events that occurred prior to October 26, 2007, necessarily fall outside the scope of Plaintiff's claim.

Although he initially opposed these grounds for dismissal, Plaintiff has failed to respond to the motion to dismiss *sub judice*.  Plaintiff has neither filed a current memorandum in

11

opposition contesting the OSUPS Defendants' argument nor has he otherwise attempted to incorporate and revive his August 28, 2009 briefing (Doc. # 31).  This Court cannot guess as to the arguments Plaintiff currently wishes to make or might make, or why he has apparently decided to abandon defending against the OSUPS Defendants' motion to dismiss.  The Court can proceed only on those arguments that the parties have put before it in the context of the specific motion to dismiss under consideration and its related briefing.

Accordingly, as a result of Plaintiff's silence, the OSUPS Defendants' incorporated original reply memorandum argument (Doc. # 40) essentially addresses a continuing violations argument that, for whatever reason, Plaintiff is simply no longer making against the OSUPS Defendants.  Absent application of such a saving theory, Plaintiff's Title VII claim in his second claim for relief is untimely as to those events involving the OSUPS Defendants that occurred prior to October 26, 2007.  The Court therefore **GRANTS** the requested dismissal of claim two in this regard.

Plaintiff asserts a claim against the OSUPS Defendants for the intentional infliction of emotional distress in his third claim for relief.  Under Ohio law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress."  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*,  6 Ohio St. 3d 369, 453 N.E.2d 666, syllabus (1983).  The Sixth Circuit has explained the tort:

> In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the

> actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' "

*Williams v. York Int'l Corp.*, 63 F. App'x 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted in *Williams*)).  Ohio law also provides for liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Torres v. White*, 46 F. App'x 738, 755 (6th Cir. 2002) (quoting *Yeager*, 6 Ohio St. 3d at 375, 453 N.E.2d at 671 (citation to Restatement (Second) of the Law, Torts 71, § 46(1) cmt. d (1965) eliminated)).

The OSUPS Defendants move for dismissal on a number of grounds, including the contention that Plaintiff has failed to allege conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency so that it is considered utterly intolerable in a civilized community.  Without being required to consider the remaining prongs of this mandated inquiry, the Court agrees that this second prong of the state law claim proves dispositive.  Plaintiff has simply failed to present facts indicating conduct that a reasonable person could conclude is " 'beyond all possible bounds of decency.' " *Liadis*, 47 F. App'x at 299 (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard (quoting *Yeager*, 6 Ohio St. 3d at 374-75, 453 N.E.2d at 671)); *Torres*, 46 F. App'x at 756-57 (same).  His allegations attempt to recast his core claims–ethnic bias, retaliation, and national origin and ancestral discrimination–as extreme and outrageous conduct.  But such an approach falls short given the nature of the specific conduct asserted here.  *See Shepard v. Griffin Servs., Inc.*, No. 19032, 2002 WL 940110, at * (Ohio 2d App. Dist. May 10, 2002) (rejecting claim

13

because the asserted conduct was not outrageous, even if discriminatory).  The Court therefore

**GRANTS** the motion to dismiss the third claim in regard to the OSUPS Defendants.

In his fourth claim for relief, Plaintiff asserts a claim under 42 U.S.C. § 1981.  Section

1981 provides:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981(a).  The statute also states that "[f]or purposes of this section, the term 'make

and enforce contracts' includes the making, performance, modification, and termination of

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship."  42 U.S.C. § 1981(b).  Claims brought under § 1981 are governed by the same

framework applied to Title VII claims.  *See Patterson v. McLean Credit Union,* 491 U.S. 164

(1989); *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1094 (6th Cir. 1996).  Therefore, the

"elements of a *prima facie* case are the same for employment claims stemming from Title VII

and § 1981."  *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 573 n.5 (6th Cir. 2000).  *See also*

*Thompson v. UHHS Richmond Heights Hosp., Inc.*, No. 08-4435, 2010 WL 1427599, at *2 (6th

Cir. Apr. 12, 2010).

Similar to the disposition of Plaintiff's Title VII claim constituting his second claim for

relief, dismissal of Plaintiff's fourth claim is warranted to the extent that it overreaches in the

scope of the time period the arguably vague claim addresses.  The facts Plaintiff pleads in his

Second Amended Complaint, as opposed to the legal conclusions asserted therein, indicate that

Plaintiff's employment with OSUPS and OSUPI ended on January 20, 2006.  Therefore, any of

the conduct about which he complains that occurred subsequent to this date falls outside the scope of his § 1981 claim. As of January 21, 2006, OSUPS and OSUPI were no longer Plaintiff's employers, which means there was no employment contracts and that his assertion of racial discrimination "in [the] course of his employment with Defendants" presents a foundation for his narrow claim that precludes post-employment events. (Doc. # 51 ¶ 168.) In other words, only a potentially viable claim against OSUPS and OSUPI exists for those events occurring prior to January 21, 2006. The Court **GRANTS** the motion to dismiss claim four in regard to any events occurring after January 20, 2006.

Plaintiff asserts in claim five a state law breach of contract claim. To succeed on a breach of contract claim under Ohio law, a plaintiff must establish the "existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 98 Ohio App. 3d 597, 600, 649 N.E.2d 42, 44 (Ohio 2d App. Dist. 1994) (citations omitted). OSUPS and OSUPI do not argue here that Plaintiff cannot meet these elements. Rather, these defendants assert that they are entitled to the dismissal of the majority of the damages that Plaintiff seeks in connection with the asserted breach of contract.

Plaintiff pleads in claim five that he has "suffered irreparable injuries, including but not limited to, loss of pay, benefits, and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, lose [*sic*] to his professional and academic reputation and standing, personal indignity, and other intangible injuries, all for which they should be compensated." (Doc. # 51 ¶ 175.) OSUPS and OSUPI argue that the bulk of this list constitutes emotional distress damages that are generally impermissible under Ohio law. This is a correct assertion. *Hartman v. Conseco Senior Health Ins. Co.*, No. 3:08-CV-099, 2010 WL 1981014, at

*7 (S.D. Ohio May 18, 2010) ("[I]n Ohio, damages for emotional distress may not be recovered for a breach of contract." (citing *EEOC v. Honda*, No. 2:06-cv-99233, 2007 WL 1541364, at *7 (S.D. Ohio May 23, 2007))).  Additionally, given the nature of the asserted employment contract breach, Plaintiff's claim fails to fall into any potential exception to the foregoing general rule. *See Douglas v. Ratliff*, No. C-1-09-60, 2009 WL 3378672, at *12 (S.D. Ohio Oct. 20, 2009) ("Plaintiffs cannot recover damages for emotional injuries resulting from a breach of contract unless 'the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.' " (quoting *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St. 3d 226, 230, 754 N.E.2d 785, 788 (2001))).  *See also EEOC v. Honda of Am., Mfg., Inc.*, No. 2:06-cv-00233, 2007 WL 1541364, at *7 (S.D. Ohio May 23, 2007).  This Court therefore **GRANTS** the motion to dismiss the requested damages for "emotional pain and suffering, mental anguish, humiliation, embarrassment, lose [*sic*] to [Plaintiff's] professional and academic reputation and standing, personal indignity, and other intangible injuries."  (Doc. # 51 ¶ 175.)  Plaintiff's pursuit of damages for "loss of pay, benefits, and other economic losses" remains intact.  (Doc. # 51 ¶ 175.)

In his sixth claim for relief, Plaintiff asserts a promissory estoppel claim against OSUPA and OSUPI.  Promissory estoppel is a viable cause of action in at-will employment cases in Ohio.  To establish a *prima facie* case of promissory estoppel in the employment context, a plaintiff must demonstrate " '(1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance.' " *Kunkle v. Akron Management Corp.*, No.22511, 2005 WL 2400933, at *2 (Ohio 9th App. Dist. Sept. 1, 2005) (quoting *Current Source, Inc. v. Elyria City School Dist.*, 157 Ohio App. 3d 765,

773, 813 N.E.2d 730, 738 (Ohio 9th App. Dist. 2004). The Ohio Supreme Court has further

explained:

> [T]he doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
>
> The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 105, 483 N.E.2d 150, 155 (1985). OSUPS

and OSUPI argue that dismissal of this claim is warranted because Plaintiff has failed to plead

facts meeting the foregoing elements.

This Court agrees that claim six fails to present a clear and unambiguous promise made

by OSUPS and OSUPI. Plaintiff alleges in that claim that "OSUPS and OSUPI representative

caused the Plaintiff to conclude, on a good faith basis, that reporting past and ongoing

misdiagnosis of women was required . . . and that he would not be retaliated against for

complaining about discrimination based on his national origin and/or ancestry." (Doc. # 51 ¶

177.) But Plaintiff does not indicate what promise led to these subjective conclusion.

Review of the entirety of the Second Amended Complaint reveals two references to

promises in paragraphs incorporated into claim six. Given Plaintiff's failure to respond to the

motion to dismiss and the general state of his pleading, it is unclear whether Plaintiff intends to

rely on these allegations of promises. The first paragraph contains a general allegation that

OSU, "acting through its supervisory employees, made several promises " to Plaintiff that the

alleged discrimination by Barsky would be resolved and that Plaintiff would be transferred to

another department where Barsky would not be his supervisor.  (Doc. # 51 ¶ 88.)  The second

paragraph asserts that Plaintiff delayed filing a complaint with the Equal Employment

Opportunity Commission as a result of his reliance "on supervisory employee's representations."

(Doc. # 51 ¶ 89.)  Neither of these allegations present a clear and unambiguous promise.

Moreover, neither general allegation presents a promise by OSUPS or OSUPI that Plaintiff's

reporting asserted misdiagnoses would be protected or that there would be no retaliation, which

are the dual components of claim six.  (Doc. # 51 ¶¶ 176-82.)  Nor does Plaintiff identify what

OSUPS or OSUPI policies he references in that claim as purportedly constituting a promise.

(Doc. # 51 ¶¶ 179-80.)

 Plaintiff's vague allegations are not only impermissibly conclusory but, as OSUPS and

OSUPI note, essentially *subjective* conclusions.  Both flaws are fatal to his claim.  *See Fennessey*

*v. Mt. Carmel Health Sys., Inc.*, No. 08AP-983, 2009 WL 2331868, at *4 (Ohio 10th App. Dist.

July 30, 2009) ("Whether a plaintiff proceeds under a theory of implied contract or promissory

estoppel, specific representations leading to an expectation of continued employment are

essential."); *Castillo v. Associated Pathologists, Inc.*, No. L-06-1076, 2006 WL 3525431, at *5

(Ohio 6th App. Dist. Dec. 8, 2006) (holding that a party's "perception is not sufficient to meet

the requirement for a clear and unambiguous promise").  The Court thus **GRANTS** the motion to

dismiss claim six.

 Plaintiff asserts in claim seven of his pleading First Amendment retaliation, presumably

under 42 U.S.C. § 1983, against Mekhijian and Sedmak.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
> States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, in order to assert a valid § 1983 claim generally, Plaintiff must show that, while acting under color of state law, Mekhijian and Sedmak deprived him of a right secured by the Federal Constitution or laws of the United States.  *See Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010); *Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).  To establish First Amendment retaliation specifically, Plaintiff must show

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by his protected conduct.

*Vereecke v. Huron Valley Sch. Dist.*, No. 08-2051, 2010 WL 2499433, at *6 (6th Cir. June 18, 2010) (citing *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).

Arguing both by incorporating prior briefing and by asserting additional points in their newest briefing, Mekhijian and Sedmak move for dismissal of this claim on the grounds that Plaintiff has failed to present facts indicating that he engaged in constitutionally protected speech, that he has failed to allege specific conduct by these defendants invoking his First Amendment rights, and that Mekhijian and Sedmak are entitled to qualified immunity.  The briefing also presents the arguments that Plaintiff has failed to allege that any of the OSUPS Defendants were state actors or that they were acting under color of state law.  Because Plaintiff does not assert claim seven against OSUPS and OSUPI, however, the Court shall consider these latter arguments as involving only Mekhijian and Sedmak.  The majority of these foregoing arguments are moot because there is no basis to conclude that Mekhijian and Sedmak deprived

19

Plaintiff of a right secured by the Federal Constitution or laws of the United States.

Plaintiff asserts in his Second Amended Complaint that he "spoke as a private person and licensed physician" and that Mekhijian and Sedmak retaliated against him "[f]rom October 2007 through May 2009." (Doc. # 51 ¶ 184.) As Mekhijian and Sedmak correctly note, however, this conclusory statement ignores that Plaintiff has simply failed to assert any actions by either individual related to Plaintiff's First Amendment rights. The pleading at best presents only hints of inaction with no indication of conduct by either defendant targeting Plaintiff's speech.

Additionally, assuming *arguendo* that Mekhijian and Sedmak qualify as state actors, the Court recognizes that there is a dispositive issue related to whether Plaintiff can claim the protections of the First Amendment here. As noted, Plaintiff alleges in claim seven that he was speaking as a private person and a licensed physician. (Doc. # 51 ¶ 184.) This contradicts his earlier allegation in his pleading that his reporting misdiagnoses was a contracted-for component of his job. (Doc. # 51 ¶ 174 ("Defendants' [*sic*] contracted with Plaintiff Nuovo to provide ethical and competent treatment of patients and when Plaintiff did so, by reporting misdiagnoses, Defendants fired him.").) Plaintiff incorporates into claim seven this allegation that his speech was part of his job. (Doc. # 51 ¶ 183 ("Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 178 above.").) What this means is that Plaintiff is asserting that he spoke as a private person when he engaged in speech that was a requirement of his job as well as an outgrowth of his position as a licensed physician.

It is well settled that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v.*

20

*Ceballos*, 547 U.S. 410, 421 (2006).  Plaintiff's speech concerning OSU policies, practices, and

problems was speech made pursuant to his official duties, whether by contractual or professional

obligation.  *See Garner v. City of Cuyahoga Falls*, 311 F. App'x 896, 901-02 (6th Cir. 2009)

(holding that statements regarding safety risks made to a supervisor and never to members of the

public were within official duties of speaker and thus outside constitutional protection);

*Rohrbough v. Univ. of Colorado Hosp. Auth.*, 596 F.3d 741, 750 (10th Cir. 2010) (holding that a

transplant coordinator's speech concerning a cover-up fell outside the First Amendment because

"[h]er internal discussions about these duties certainly 'stemmed from and were the type of

activities that she was paid to do' " (quoting *Green v. Bd. of County Comm'rs*, 472 F.3d 794, 801

(10th Cir. 2007))).  This removes the speech from First Amendment protections, which in turn

precludes Plaintiff's § 1983 claim against Mekhijian and Sedmak (and OSUPS and OSUPI to the

extent Plaintiff may have intended to name these entities in this claim via an agency argument).

The Court therefore **GRANTS** the motion to dismiss Plaintiff's seventh claim in regard to these

defendants.

      In his eighth claim for relief, Plaintiff asserts a § 1983 claim against OSUPS and OSUPI

predicated upon an asserted violation of his procedural due process rights.  This claim targets the

May 2009 reopening of the previously dismissed charges of research misconduct brought against

Plaintiff.  But, as OSUPS and OSUPI correctly point out, the purported constitutional violation is

that "OSU failed to follow its own misconduct policies."  (Doc. # 51 ¶ 194.)  What this means is

that, even assuming *arguendo* that OSUPS and OSUPI are state actors, Plaintiff has asserted a

claim against these entities for conduct over which they had no control and with which they were

not involved based on the alleged facts.  In other words, "[s]ince Plaintiff's due process claim

does not appear to extend to any defendants other than OSU, the claim should be dismissed for this reason alone." (Doc. # 14, at 19, incorporated by Doc. # 55, at 40.) This Court agrees. Plaintiff has failed to set forth any facts that, necessarily accepted as true, present a plausible due process violation by OSUPS and OSUPI that constitutes a viable § 1983 claim upon which this Court can grant relief. The Court thus **GRANTS** the motion to dismiss claim eight and declines to discuss the moot alternative arguments for dismissal set forth in the briefing.

Turning to claim nine, the Court notes that the heading of the claim in the Second Amended Complaint reads "Abuse of Process by Defendant Dr. Sanford Barsky, acting as agent/employee of OSUPI and OSUPS." (Doc. # 51, at 26.) Ohio law provides that

> [t]he three elements of a claim for abuse of process are "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."

*Hershey v. Edelman*, No. 09AP-400, 2010 WL 1820213, at *6 (Ohio 10th App. Dist. May 6, 2010) (quoting *Yaklevich v. Kemp Schaeffer & Rowe Co.* (1994), 68 Ohio St. 3d 294, 626 N.E.2d 115, paragraph one of the syllabus). OSUPS and OSUPI assert that it is unclear whether Plaintiff intends to assert this claim against any of the OSUPS Defendants.

These defendants incorporate by reference the arguments for dismissal that Barsky has set forth in his own prior motion to dismiss, as well as asserting that there is simply no factual foundation to support such a claim against OSUPS and OSUPI. This latter contention is correct. Assuming *arguendo* that Plaintiff's poor pleading is intended to assert claim nine against OSUPS and OSUPI, the Court recognizes that the factual basis for this claim is the 2009

22

scientific misconduct charges against Plaintiff. This is years after the 2006 termination of Plaintiff's employment with OSUPS and OSUPI, and Plaintiff has failed to allege any facts supporting his apparent conclusion that Barsky pursued the 2009 charges pursuant to his purported relationship with OSUPS and OSUPI. Absent some predicate factual basis, Plaintiff has failed to state a plausible abuse of process claim against OSUPS and OSUPI. Accordingly, the Court **GRANTS** their motion to dismiss claim nine.

In Plaintiff's tenth claim for relief, he asserts a state law claim for conspiracy against various individuals, two of whom are Mekhijian and Sedmak. Both men move for dismissal on several grounds, including the contention that if, as Plaintiff asserts, they were acting as common agents or employees of OSUPS and OSUPI, then he has failed to state a plausible conspiracy claim.

The concept that Mekhijian and Sedmak invoke, without using the words, is the intra-corporate conspiracy doctrine. Under Ohio law, the tort of civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (1995). An underlying unlawful act is also required before a party can prevail on a civil conspiracy claim. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868 (1998). What can defeat such a conspiracy claim, however, is when the purported conspirators are all part of the same corporate or governmental entity.

The intra-corporate conspiracy doctrine provides that employees of a corporation or governmental entity cannot conspire among themselves because they are treated as one entity.

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir.

1991) (citing *Dougherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)).  *See,*

*e.g., Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 927 (S.D. Ohio 2001) (granting motion to

dismiss §1985(3) allegation for failure to state a claim upon which relief may be granted because

intracorporate conspiracy doctrine precluded finding of conspiracy).  The doctrine has been

applied to the Ohio common law claim.  *See, e.g., Lutz v. Chesapeake Appalachia, L.L.C.*, No.

4:09CV2256, 2010 WL 2541669, at *5 n.13 (N.D. Ohio June 18, 2010); *Kerr v. Hurd*, No. 3:07-

cv-297, 2010 WL 890638, at *10 (S.D. Ohio Mar. 15, 2010).  Plaintiff's classification of the

conspirators as agents or employees of OSUPS and OSUPI runs afoul of the prohibition that

"[w]here defendants, allegedly co-conspirators, are members of the same collective entity, there

are not two separate 'people' to form a conspiracy."  *Kerr*, 2010 WL 890638, at *10.  Thus, as a

result of the application of the intra-corporate conspiracy doctrine, Plaintiff has failed to set forth

facts–as opposed to unsubstantiated and unwarranted legal conclusions–that present a plausible

conspiracy involving Mekhijian and Sedmak.  The Court therefore declines to address the moot

alternative grounds for dismissal and **GRANTS** the motion to dismiss claim ten.

Citing Ohio Revised Code §§ 4112.01 and 4112.14, Plaintiff asserts in claim eleven a

national origin, race, and ancestral discrimination claim against OSUPS and OSUPI.  These

defendants move for dismissal on the grounds that § 4112.01 does not present a statutory claim

for relief and § 4112.14 presents only a claim for age discrimination, which Plaintiff does not

support with facts.

OSUPS and OSUPI are correct that § 4112.01 is simply a definitions statute and does not

contain a private claim for relief, while § 4112.14 does present a claim for relief for age

discrimination.  Also correct is the contention that Plaintiff has failed to include any facts anywhere in his Second Amended Complaint suggesting that OSUPS or OSUPI discriminated against him on the basis of his age.  Absent such necessary content in the pleading, it is beyond question that Plaintiff has failed to assert factual content that allows this Court to draw the reasonable inference that these defendants are liable for the misconduct alleged.  The Court **GRANTS** the motion to dismiss claim eleven.

### C.  Barsky's Motion to Dismiss (Doc. # 56)

Barsky's motion to dismiss targets three of the claims that Plaintiff asserts against him. The first such target is claim four, in which Plaintiff asserts that Barsky and others engaged in race and ancestral discrimination in violation of 42 U.S.C. § 1981.  Barsky contends that Plaintiff has failed to allege a plausible claim upon which this Court can grant relief.  Barsky presents the crux of his argument as follows: "Plaintiff asserts general, baseless allegations that Dr. Barsky 'hated Italians," and, on one instance, referred to Plaintiff as 'a stupid Italian.' " (Doc. # 56, at 12.)

This argument is unpersuasive.  Plaintiff correctly notes in his briefing that the Second Amended Complaint actually contains much more in terms of relevant factual content when the quoted material is placed in the context in which it is actually pled.  The Second Amended Complaint provides that during Plaintiff's poor performance evaluation, the following exchange took place:

> During the evaluation, Dr. Barsky stated: "Why do you think I have taken all of these negative actions against you."  Dr. Nuovo said in response: ["]I don't know."  Barsky then stated: "How bout it's because I don't like Italians."

(Doc. # 51 ¶ 81 (punctuation retained from pleading).)  Necessarily accepting these alleged facts as true for purposes of today's Rule 12(b)(6) inquiry, this Court is left with direct evidence of discrimination that amounts to more than the general allegations Barsky alleges.

Barsky also argues that the Court must dismiss claim four to the extent that it seeks monetary relief from Barsky acting as an OSU employee.  Plaintiff insists in his memorandum in opposition, however, that he has named Barsky in claim four only in his individual capacity and not in his capacity as an OSU employee.  This representation tracks language in the Second Amended Complaint in which Plaintiff pleads that "Barsky . . . is being sued in his individual capacity (not as an OSU employee) . . . with regard to 42 U.S.C. § 1981 only."  (Doc. # 51 ¶ 13.) Barsky counters in his reply memorandum that, "looking at the Second Amended Complaint, it is clear that the claim is necessarily asserted against Dr. Barsky in his capacity as an OSU employee."  (Doc. # 81, at 2.)  Barsky also acknowledges in his briefing, however, that perhaps claim four states a § 1981 claim against Barsky in both his official and individual capacities.

This Court recognizes that Plaintiff's pleading is often, at best, less than clear.  The Court is also aware that if Plaintiff intended to pursue monetary relief on an official capacity claim in claim four, then Barsky's sovereign immunity argument would require attention.  But Plaintiff has represented that his pleading in claim four presents a limited or particularized scope.  Despite the pleading's careless conflation of Barsky as an individual and its descriptions of his acts as an OSU employee, claim four is thus confined to an individual capacity claim against Barsky.  The Court therefore **DENIES** Barsky's motion to dismiss in regard to claim four.

In his seventh claim, Plaintiff asserts a claim against Barsky and others for First Amendment retaliation, which the Court again notes is presumably under 42 U.S.C. § 1983.

26

Barsky argues that dismissal of this claim is warranted because Plaintiff's speech–his reporting of alleged misdiagnoses–falls outside First Amendment protection.  The Court has already concluded above in connection with the OSUPS Defendants' motion to dismiss that Plaintiff's speech concerning OSU policies, practices, and problems was speech made pursuant to his official duties, despite Plaintiff also classifying himself as a private citizen engaging in whistle blowing.  That same rationale proves dispositive here, which serves to moot Barsky's alternative arguments for dismissal.  The Court **GRANTS** the motion to dismiss claim seven in regard to Barsky.

The last claim Barsky targets in his motion to dismiss is Plaintiff's § 1983 claim against Barsky and others predicated upon an asserted violation of Plaintiff's procedural due process rights.  In discussing above this eighth claim in connection with the OSUPS Defendants' motion to dismiss, the Court explained that the claim targets the May 2009 reopening of the previously dismissed charges of research misconduct brought against Plaintiff.  The Second Amended Complaint pleads that the purported constitutional violation is that "OSU failed to follow its own misconduct policies."  (Doc. # 51 ¶ 194.)  No factual contention in the pleading identifies Barsky as responsible for the processing of his own complaint or provides an inference that Barsky in any way controlled the actions of the OSU individuals who handled his complaint.  The mere filing of charges does not control how OSU handles the charges.  Thus, similar to the OSUPS Defendants, Barsky is entitled to dismissal because the pleading fails to present any due process violation by this defendant that constitutes a plausible § 1983 claim.  Finding the alternative arguments for dismissal to be moot, the Court therefore **GRANTS** the motion to dismiss claim eight against Barsky.

27

Last, the Court recognizes that, based upon the rationale set forth in the immediately following discussion presented in the next section, this Court lacks jurisdiction over claims one, three, nine, and ten.  *See* Ohio Rev. Code § 9.86; Ohio Rev. Code § 2743.02(F).  The Court therefore **DISMISSES** these state law claims without prejudice.

### D.  The OSU Defendants' Motion to Dismiss (Doc. # 57)[2]

The OSU Defendants move for dismissal of seven of Plaintiff's claims.  They assert that dismissal of three of these claims is warranted because this Court lacks the jurisdiction to entertain such state law claims.  This Court agrees.

Two statutes support the OSU Defendant's position.  The first statute, Ohio Revised Code § 9.86, provides in relevant part that

> no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Rev. Code § 9.86.  The second statute, recognizes this immunity and vests the threshold determinations in the Ohio Court of Claims by providing:

> A civil action against an officer or employee . . . that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity

---

[2]  As already noted, the OSU Defendants consist of OSU, Gee, Cloyd, Mekhijian, Whitacre, Alutto, Sedmak, and Bornstein.  Because some of the claims target only the individual defendants, the Court shall at times refer in this section to Gee, Cloyd, Mekhijian, Whitacre, Alutto, Sedmak, and Bornstein as "the OSU Individual Defendants."

> under section 9.86 of the Revised Code and whether the courts of common pleas
> have jurisdiction over the civil action.

Ohio Rev. Code § 2743.02(F).   Thus, as another judicial officer has recognized, "[t]he Sixth Circuit has read §§ 9.86 and 2743.02(F) together to hold that a state employee is immune from state law claims until the Court of Claims has held that § 9.86 immunity is unavailable."  *Prior v. Mukasey*, No. 3:08CV994, 2008 WL 5076821, at *2 (N.D. Ohio Nov. 21, 2008).  This means that, "'[u]ntil the Ohio Court of Claims determines that [defendant] are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert jurisdiction.' " *Id.* (quoting *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989)).  Moreover, the Ohio Court of Claim's exclusive jurisdiction to engage in the statutorily mandated inquiry applies to individuals with dual employment who serve as employees of private corporations while working under the umbrella of an affiliated state medical institution.  *Theobald v. Univ. of Cincinnati*, 111 Ohio St. 3d 541, 543, 546, 857 N.E.2d 573, 577, 579 (2006) (addressing the issue of "[a] health-care practitioner who has dual status as a private practitioner and as an employee of a state medical institution").

Plaintiff's arguments, which attempt to remove the individuals (and their conduct) targeted by his public policy, intentional infliction of emotional distress, and conspiracy claims from the scope of statutory immunity, are therefore inappropriate for this Court and more appropriate for the Ohio Court of Claims.  Accordingly, the Court **GRANTS** the motion to dismiss the first, third, and tenth claims and dismisses these claims without prejudice.  *See Underfer v. Univ. of Toledo*, 36 F. App'x 831, 834-35 (6th Cir. 2002) (dismissing without prejudice state law claims that should have first been brought in state court of claims).

29

This leaves Plaintiff's federal claims for relief.  OSU seeks dismissal of select non-compensation components of claim two on the grounds that Plaintiff failed to assert the remaining components of his claim within the proscribed time limitations.  To be specific, OSU does not seek the dismissal of the Title VII compensation claims or "the results of the human resources investigation and Plaintiff's appeal of that investigation; the alleged non-responses to his letters to OSU Individual Defendants Gee, Alutto, and Cloyd; and the denial of Plaintiff's request to be restored as Director of Cytology."  (Doc. # 57, at 10.)  Rather, OSU seeks the dismissal of all other events that took place prior to October 26, 2007.  To support this, OSU argues that Plaintiff failed to include these events as part of a timely EEOC charge, an argument that echoes the OSUPS Defendants' successful attack on claim two addressed above.

Unlike the OSUPS Defendants' motion to dismiss, Plaintiff has filed a memorandum in opposition to OSU's motion to dismiss.  Plaintiff argues that dismissal is not warranted because the pre- and post-October 26, 2007 events constitute continuing violations.  As OSU correctly explains in its briefing, however, this argument is unpersuasive.  The events of which Plaintiff complains are independently actionable, discrete acts that fail to present a general pattern or practice of class-wide discrimination pursuant to an official policy.  *See Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 994 (6th Cir. 2009); *Russell v. Ohio Dep't of Admin. Servs.*, 302 F. App'x 386, 390 (6th Cir. 2008).

Equally unpersuasive is Plaintiff's argument that equitable tolling should salvage his otherwise time-barred claims.  Plaintiff avers that he relied on representations from supervisors that the alleged discrimination would be resolved soon and that he would be transferred.  But such purported representations do not constitute the sort of statements that justify the

extraordinary application of tolling.  That Plaintiff elected to forego filing with the EEOC based on a potential likelihood that there would be no future discrimination does not render inequitable his self-inflicted decision to not act on his rights.

One final point in regard to claim two warrants discussion.  Plaintiff asserts that because he did not know of the misconduct charge against him until February 15, 2008, this aspect of his claim should survive.  OSU states in its reply memorandum that it "never mentioned this action in listing the untimely events and has only moved to dismiss Plaintiff's Title VII claims to the extent they are untimely."  (Doc. # 82, at 8.)  Accordingly, the Court accepts that OSU has not requested dismissal of this component of claim two.  The Court therefore **GRANTS** the motion to dismiss claim two except in regard to the compensation component of the claim, the misconduct component, and those components addressing events that occurred after October 26, 2007.

In claim four, Plaintiff asserts a § 1981 claim for relief based on race and ancestry discrimination.  The OSU Individual Defendants move for dismissal on several grounds, perhaps the most prominent of which is their asserted lack of personal involvement in the asserted discrimination.  They note that "Plaintiff appears to fault them only for their lack of response to his complaints" and direct this Court to authority intended to support the proposition that mere inaction or unresponsiveness does not equal the requisite personal involvement necessary to present a plausible § 1981 claim.  (Doc. # 57, at 12.)  The facts pled in relation to Gee, Alutto, Cloyd, and Bornstein do indeed present alleged indifference to Plaintiff's asserted plight.  The question is whether such indifference presents a plausible claim.

Depending upon the circumstances, a lack of involvement is insufficient to support a

claim of individual § 1981 liability.  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (6th Cir. 2000) (holding that negligence in the enforcement of an anti-discrimination policy fails to "constitute the 'personal involvement' or affirmative link' necessary to support a claim of individual liability" under § 1981).  Under other circumstances, however, a failure to act can present a plausible § 1981 claim.  *See Wallace v. DM Customs, Inc.* , No. 8:04-cv-115-T-23TBM, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006) (noting that "[p]ersonal involvement may be satisfied by proof that the individual had knowledge of the alleged acts of discrimination and failed to remedy or prevent them").

Plaintiff argues that the indifference here rises to the level of gross negligence, while the moving defendants insist that Plaintiff has alleged mere negligence.  This is a close call, but the Court is mindful that its Rule 12(b)(6) inquiry asks whether the factual content pled allows this Court to draw the reasonable inference that the targeted defendants are liable for the misconduct alleged.  Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that he has just barely presented enough to survive dismissal and pursue his claim here.  This Court similarly rejects the relatively Spartan invocation of qualified immunity here given that the apparent nature of the movants' jobs suggests that their assertion that they "had no reason to believe that they could be held personally liable . . . or that they were obligated to personally respond to Plaintiff's complaints" ignores the nature of their duties.  Consequently, the Court **DENIES** the motion to dismiss claim four in regard to the moving defendants.

The OSU Individual Defendants also move for the dismissal of claim seven.  Among other alternative grounds, they argue that Plaintiff has failed to have engaged in constitutionally protected speech.  This Court has already held above that Plaintiff's speech concerning OSU

policies, practices, and problems was speech made pursuant to his official duties, despite

Plaintiff also classifying himself as a private citizen engaging in whistle blowing.  The same

analysis applies here and proves dispositive of Plaintiff's claim.  This Court therefore **GRANTS**

the motion to dismiss claim seven for this reason, which moots the remaining arguments for

dismissal.

In claim eight, the last remaining claim for discussion, Plaintiff asserts violations of his

procedural due process rights.  He has sued OSU, as well as Bornstein and Whitacre in their

individual capacities only, seeking monetary damages and injunctive relief.

The OSU Defendants move for dismissal on a number of grounds.  OSU itself relies upon

an often repeated rationale that another judicial officer in this District essentially summarized as

follows:

> For a defendant to be held liable for any alleged deprivation of rights under
> § 1983, the defendant would have to be deemed a "person."  The United States
> Supreme Court has held that "neither a State nor its officials acting in their official
> capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 591
> U.S. 58, 71 (1989).  OSU Medical Center is an agency of the State of Ohio. *See
> Verhoff v. Ohio State Univ. Med. Ctr.*, 125 Ohio Misc.2d 30, 797 N.E.2d 592 (Ohio
> Ct. Clms. 2003); *see also Caruso v. State*, 136 Ohio App.3d 616, 737 N.E.2d 563
> (Ohio App. 10th Dist. 2000).  OSU Medical Center, therefore, cannot be held liable
> under § 1983.  Furthermore, the Eleventh Amendment to the United States
> Constitution, which prohibits federal courts from granting money judgments or
> injunctive relief against state agencies, would also bar any suit against OSU Medical
> Center under § 1983. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65
> S.Ct. 347, 89 L.Ed. 389 (1945); *Pennhurst State School & Hospital v. Halderman*,
> 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that "[i]t is clear, of
> course, that in the absence of consent a suit in which the State or one of its agencies
> or departments is named as the defendant is proscribed by the Eleventh
> Amendment").

*Henricks v. Pickaway Corr. Inst.*, No. 2:08-cv-580, 2009 WL 89200, at *2 (S.D. Ohio Jan. 7,

2009) (footnote omitted).  *See also Underfer*, 36 F. App'x at 834 (describing application of Eleventh Amendment to public-funded Ohio universities); *Hutton v. Jackson*, No. 1:06cv65, 2007 WL 2111102, at *7 (S.D. Ohio July 19, 2007) (collecting cases applying Eleventh Amendment to OSU and OSU Medical Center).  In light of this reasoning, the Court must agree with the OSU Defendants that "Plaintiff's procedural due process claim against OSU never gets off the ground."  (Doc. # 57, at 18.)  The Court **GRANTS** the motion to dismiss claim eight against OSU.

Bornstein and Whitacre then move for dismissal of the individual capacity components of claim eight on the grounds of qualified immunity.  The doctrine of qualified immunity, under certain circumstances, operates to shield from civil liability governmental officials who are performing official duties.  *Sinick v. County of Summit*, 76 F. App'x 675, 678-79 (6th Cir. 2003). This affirmative defense is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits.  *See D'Agastino v. City of Warren*, 75 F. App'x 990, 993 (6th Cir. 2003).

The Sixth Circuit has also explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addition to shielding officials from liability, qualified immunity may entitle the official to not stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided

where the defense is dispositive.  *Id.*

        In addressing the potential applicability of qualified immunity, a court asks two

questions: (1) "whether, on the plaintiff's facts, there has there been a violation." and (2)

"whether that violation involved 'clearly established constitutional rights of which a reasonable

person would have known.' "  *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting

*Dickerson v. McClelland*, 101 F.3d 1151, 1158 (6th Cir. 1996)).  *See also Saucier*, 533 U.S. at

201.  A court "may exercise its 'sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand.' "  *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (quoting *Pearson*

*v. Callahan*, ___ U.S. ___, ___, 129 S.Ct. 808, 818 (2009)).

        Qualified immunity thus provides that an official can be found to have violated the

Constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her

action.  *Saucier*, 533 U.S. at 206.  The reasonableness of such mistakes is inherently dependant

upon the clarity of the legal constraints governing the particular conduct involved.  The contours

of the right must be sufficiently clear that a reasonable official would understand that what he or

she is doing violates that right.  *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

(1987)).  *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public

official is entitled to qualified immunity for conduct in performing discretionary functions so

long as that conduct does not violate clearly established statutory or constitutional rights of

which a reasonable [official] would have known").

        In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate

burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified

immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right." *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon,* 853 F.2d 418, 423-24, 426 (6th Cir. 1988)).

Relying on this framework, Bornstein and Whitacre argue that, on the facts pled, there is no constitutional violation and, even if there were, neither defendant should reasonably have known that their alleged deviation from protocol in handling the revived misconduct charge amounted to a deprivation of rights under the Constitution. They direct this Court to case law purportedly standing for the proposition that a state actor's violation of internal rules or procedures does not present a due process claim.

Plaintiff in turn asserts that Bornstein and Whitacre violated his due process rights by failing to conduct a screening of the misconduct charges before they reopened the inquiry, despite OSU's policy calling for such a screening and despite federal law allegedly requiring such misconduct procedures. Unhelpfully, his memorandum in opposition in regard to this claim states that "it is difficult to comprehend how a state law remedy could fix the failure to perform a preliminary assessment" without devoting discussion to whether any state law remedy, however arguably limited, nonetheless exists. (Doc. # 80, at 20.)

The Court begins with the cases to which Bornstein and Whitacre direct this Court for authority precluding claim eight. These defendants contend that "claims that a state actor failed to comply with internal rules or procedures have long been held inadequate to support procedural due process claims" and cite as support *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299

36

(6th Cir. 1984), and *Anderson v. Ohio State University*, No. C-2-00-123, 2001 WL 99858 (S.D. Ohio Jan. 22, 2001).  Such reliance is at least partially problematic.

In *Hall*, the court of appeals addressed a fact pattern in which an expelled student asserted a due process claims predicated in part upon his school's purported failure to follow its own unwritten practice of requiring a student accuser to put a charge against the expelled student into writing.  The Sixth Circuit stated that "the school *may* have violated" the internal practice and noted that "that particular charge was not the basis for the decision to expel" the student, despite a panel member considering the accuser's testimony to be significant.  *Hall*, 742 F.2d at 309 (emphasis added).  Thus, the "process" at issue was ultimately irrelevant because its alleged violation was not grounds for the resulting prejudice to the expelled student.  In referencing the process issue, however, the court of appeals notably stated that "such a violation of internal rules does not establish a cognizable constitutional violation in any event."  *Id.*

At first blush, this statement would appear to lend support to the moving defendants' position.  But two factors weaken this perceived support.  First, the court of appeals specifically employed the qualifying word "such" in stating "such a violation of internal rules."  The deliberate reference back to the specific type of violation involved in that case–in other words, a violation of process that did not factor into the outcome that created the alleged resultant harm–precludes reading the statement to stand for a blanket proposition that *any* violation of internal rules does not establish a cognizable constitutional violation, which is the proposition that Bornstein and Whitacre ask this Court to accept and apply here.  *Hall* is thus tied to a specific type of violation–one that presents no actual effect on the complaining party's situation.

Second, the authority the court of appeals relied upon for its internal-policy violation rule

in *Hall* does not support the broad rule statement asserted by Bornstein and Whitacre.  *Hall* cites

to footnote eight of *Board of Curators v. Horowitz*, 435 U.S. 78 (1978).  That footnote addresses

a scenario in which an institution "violated" its own rules by affording students *even more*

*process* than the rules required be given.  *Id.* at 92 n.8.  Thus, *Hall*'s reliance on *Horowitz* is

apparently recognition not that any departure from internal policies is not cognizable as a

constitutional violation.  Rather, *Hall* relies upon *Horowitz* as support for recognizing that *some*

departures from internal protocols fail to constitute constitutional violations (*i.e.*, departures

without negative ramifications, for example).

More helpful to the moving defendants is the other case they cite to support their rule

statement and upon which they primarily rely in their reply memorandum, *Anderson v. Ohio*

*State University*, 2001 WL 99858.  In *Anderson*, a judicial officer in this District addressed a

situation in which the school failed to follow its own rules governing pre-termination hearings.

That judge stated:

> [T]he Sixth Circuit has consistently stated that a violation of internal rules, such as
> the university's own rules governing hearings, "does not establish a cognizable
> constitutional violation."  *Hall*, 742 F.2d at 309; *see also Purish v. Tennessee Tech.*
> *Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996); *Gies v. Flack*, No. C-3-96-61, 1996 WL
> 1671234, at *7 (S.D. Oh. Apr.24, 1996) ("Plaintiff cannot maintain a due process
> claim for [the university's] alleged failure to adhere to its handbook procedures for
> removing him from tenure.").   After all, "the federal courts, and not the
> [u]niversity[,] . . . are responsible for establishing the contours of the Due Process
> Clause of the Fourteenth Amendment."  *Tonkovich v. Kansas Bd. of Regents*, 159
> F.3d 504, 522 (10th Cir. 1998).  Accordingly, this Court will analyze the allegations
> in the Amended Complaint under federal law defining the contours of procedural due
> process.

*Id.* at *5.  This statement of the law (relying not just on the language of *Hall* but other cases as

well) and its application in *Anderson* prove more useful than *Hall* alone because *Anderson*

constitutes a case in which procedure deviations that did not ultimately deprive a plaintiff of the constitutionally guaranteed minimum level of procedural due process did not present an actionable § 1983 claim.

Anderson is thus important here because it not only teaches that not all deviations are constitutionally impermissible, however notably unpleasant and inconvenient they may be, but it also then applies that rule to a failure to afford a party all of the process an internal policy set forth. That application is closer to the instant case than the facts of Hall. The rule that some deviations are constitutionally impermissible while others are not therefore informs the argument of Bornstein and Whitacre that even if they did commit a constitutional violation, the violation did not involve a clearly established constitutional right of which a reasonable person would have known.

Given the murky clarity of the legal constraints governing the referral and screening process involved, this Court cannot conclude that the contours of procedural due process surrounding the preliminary component of the misconduct protocol is sufficiently clear so that Bornstein and Whitacre would understand that what they were doing violated the Constitution. Saucier, 533 U.S. at 202. Thus, the Court cannot say that it was clearly established that the preliminary assessment step of the misconduct process is constitutionally compelled. See Anderson, 2001 WL 99858, at *6 ("Procedural due process is concerned only with whether Plaintiff received a meaningful opportunity to present his defense. With that said, the Court notes that '[t]he Supreme Court has consistently rejected a concept of due process which would afford all complaining parties, whatever the context of the dispute, an inflexible "checklist" of legal rights.' " (quoting Frumkin v. Bd. of Trustees, 626 F.3d 19, 21 (6th Cir. 1980))).

39

The consequent conclusion is that, even assuming *arguendo* that Bornstein and Whitacre should have performed a preliminary assessment or screening, their purportedly mistaken belief that they could not and their failure to do so thus constitute at most reasonable mistakes as to the legality of their actions.  These defendants are therefore entitled to qualified immunity, and the Court accordingly also **GRANTS** the motion to dismiss the individual capacity components of claim eight.

### III.  Conclusion

The Court **GRANTS** the OSUPS Defendants' motion to dismiss.  (Doc. # 55.)  This Court dismisses claims one through three as applicable to the OSUPS Defendants, any part of claim four intended to apply to OSUPA and OSUPI for events occurring after January 20, 2006, the emotional injury damages component of claim five, and claims six through eleven as applicable to the OSUPS Defendants.

This Court also **GRANTS IN PART** and **DENIES IN PART** Barsky's motion to dismiss.  (Doc. # 56.)  Claim four remains pending only as an individual capacity § 1981 claim against Barsky, while the Court dismisses claims seven and eight against Barsky.  This Court also dismisses without prejudice claims one, three, nine, and ten against Barsky.

Last, the Court **GRANTS IN PART** and **DENIES IN PART** the OSU Defendants' motion to dismiss.  (Doc. # 57.)  This Court dismisses without prejudice claims one, three, and ten, dismisses claim seven and eight, and dismisses the time-barred components of claim two. The compensation component of claim two remains pending, as does the claims related to the misconduct charge and those events that occurred after October 26, 2007.  The entirety of claim four remains pending.

**IT IS SO ORDERED**.

          /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE